**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Gerald T. LASSITER,**
**Defendant-Appellant.**

**No. 86–2313.**

United States Court of Appeals,
Fifth Circuit.

May 27, 1987.

Constance Singleton, (Court appointed), Houston, Tex., for defendant-appellant.

James R. Gough, Asst. U.S. Atty., Henry K. Oncken, U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before THORNBERRY, REAVLEY, and POLITZ, Circuit Judges.

THORNBERRY, Circuit Judge:

Lassiter appeals his conviction on federal firearms reporting and tax return perjury charges. Finding no merit in his assignments of error, we affirm.

Gerald Lassiter worked as a full-time math teacher at the junior high level. He also held a federal license as a firearms dealer. He operated the firearms business out of his home in Houston.

In early 1981, Lassiter instructed his seventh grade class at Fonville Junior High in Houston to fill out a portion of forms ("4473 forms") used to record firearms transactions. Federal law requires licensed dealers to keep these forms as records of firearms transactions. 18 U.S.C. § 923(g)(1). Lassiter claimed to be using the forms as a class exercise in filling out job applications. He instructed the students to fill out the forms with their correct names and addresses but requested that they subtract years from their date of birth so as to reflect a greater age. In addition, he told the students to answer the questions on the forms regarding drug abuse, mental illness and prior felony convictions in the negative.

The students filled out only the transferee's portion of the forms. Lassiter al-

legedly filled in the remaining portions of the forms to reflect firearms transactions with the students that never occurred. In addition to using the forms filled out by his students, Lassiter also falsely amended 4473 forms filled out by legitimate purchasers to reflect additional transfers of guns.

The government also alleged that Lassiter substantially understated income from the sale of firearms on his tax returns for 1981, 1982 and 1983. The allegedly unreported amounts approached $50,000 a year.

A jury convicted Lassiter on a 16 count indictment. The first 13 counts involved the making of a false statement on a required firearms transaction record in violation of 18 U.S.C. § 922(m).[1] Counts 14–16 charged Lassiter with making false statements on his tax returns in violation of 26 U.S.C. § 7206(1).[2]

### Discussion

#### *Lost evidence*

In his first assignment of error, Lassiter points to the district court's failure to grant a motion to dismiss after the government lost allegedly exculpatory material. The lost evidence was a green ledger book that contained, according to Lassiter, evidence vital to his defense on the tax counts. Lassiter argues that, under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the government's loss of the evidence requires dismissal.

Lassiter's argument is unpersuasive. In *Brady*, the Supreme Court found a violation of due process in the prosecution's suppression of evidence favorable to the defendant. *Id.* at 87, 83 S.Ct. at 1196. Subsequent cases have particularized the requirements for a *Brady* violation. In

order to prove a violation of the *Brady* rule, "the defendant must prove (1) the prosecution suppressed evidence, (2) the suppressed evidence was favorable to the defense and (3) the suppressed evidence was material to the defense." *United States v. Burns*, 668 F.2d 855, 859 (5th Cir.1982) (citation omitted).

■ Lassiter cannot establish any of the *Brady* prerequisites. He does not claim that the prosecution has *suppressed* evidence, only that the prosecution *lost* evidence. Moreover, he has not shown that the green ledger was either favorable or material to his defense. As the government points out in its brief, Lassiter's case may have been better off without the ledger. If the book contained reports of cash that did not pass through Lassiter's bank accounts, then the amount of unreported income discovered by the government might have been even larger. If, however, the ledger contained records of cash that passed through Lassiter's bank accounts, those sums would appear in the government's analysis of Lassiter's accounts.

#### *Violation of "the rule"*

Lassiter next contends that the district court erred in refusing to grant a mistrial following a violation of the court's invocation of the rule regarding sequestration of witnesses. *See* Fed.R.Evid. 615.

One of the government's key witnesses was Charles Gregorski, a special agent with the Federal Bureau of Investigation formerly employed by the Internal Revenue Service. Gregorski's testimony explained how the government had used an analysis of Lassiter's bank accounts to establish unreported receipts. During Gre-

---

1. 18 U.S.C. § 922(m) provides:

   It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector knowingly to make any false entry in, to fail to make appropriate entry in, to or to fail to properly maintain, any record which he is required to keep pursuant to section 923 of this chapter or the regulations promulgated thereunder.

2. 26 U.S.C. § 7206 provides:

   Any person who—

   (1) Declaration under penalties of perjury.— Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter ... shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than 3 years, or both, together with the costs of prosecution.

gorski's testimony, the court recessed for lunch. Upon resumption of his testimony, Gregorski confessed that he had been advised by another government agent of testimony of a prior government witness. Gregorski admittedly revised his testimony based on this information.

The government cannot deny that the district court had properly invoked "the rule" requiring sequestration of witnesses. The government contends, however, that any revision in Gregorski's testimony actually benefited Lassiter's case. After the testimony of Don Roberts, a banker, the government realized that certain entries in Lassiter's bank records were not cash deposits (as previously thought) but merely bookkeeping adjustments. These adjustments *reduced* the total of unreported receipts computed by the government. A government agent advised Gregorski of this discrepancy during lunch and he revised his testimony about Lassiter's gross receipts accordingly.

We disapprove of the government's actions in this instance. The government understood what invocation of the rule of sequestration meant and knew that the rule was designed to prevent precisely what happened here—one witness revising his testimony based on the testimony of another witness.

A violation of the rule, however, does not require a mistrial. As this court noted in *United States v. Eastwood*, 489 F.2d 818, 821 (5th Cir.1974), whether to declare a mistrial for violation of a sequestration order is within the discretion of the trial court. The district court admonished the government for its actions, and the violation, though serious, did not substantively prejudice the defendant's case. We find no abuse of discretion on these facts.

### Testimony of David Jones

Lassiter objects to the court's admission of the testimony of David Jones concerning guns he purchased from Lassiter. Jones testified that the guns he received from Lassiter were resold by Jones to an individual named "Reuben" for shipment to South America. According to Jones, Lassiter knew of his desire to conduct business with a dealer willing to avoid the paperwork required by federal law. Lassiter argues that this testimony impermissibly suggested Lassiter's involvement in illegal firearms exports or "gun running."

Federal Rule of Evidence 404(b) prohibits the admission of evidence of past actions of the defendant "to prove the character of a person in order to whom he acted in conformity therewith." The rule goes on, however, to provide that such evidence may "be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." Fed.R.Evid. 404(b).

The district court's decision on the admissibility of extrinsic act evidence will not be disturbed absent an abuse of discretion. *United States v. Tafoya*, 757 F.2d 1522, 1526 (5th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 252, 88 L.Ed.2d 259 (1985). Here, the district court determined that the testimony of Jones helped explain Lassiter's conduct regarding the 4473 forms. A desire to avoid accurate paperwork on certain firearms transactions explains Lassiter's use of his students in falsifying the 4473 forms. In the language of Rule 404(b), the evidence goes to proof of motive or intent. The district court did not abuse its discretion in admitting the evidence.

### Evidence of untaken deductions

Lassiter also objects to the district court's failure to admit evidence of business deductions that Lassiter could have taken on his income tax returns in the relevant years. According to Lassiter, the unused business deductions demonstrate that he lacked the requisite specific intent to underreport income. He treated the sale of guns as a hobby and believed that, so long as his expenses exceeded his receipts, the law did not require him to report income generated from the gun sales.

The government charged Lassiter under 26 U.S.C. § 7206. The section requires the government to prove neither intent to avoid

the payment of taxes nor additional tax due. As this court noted in *United States v. Taylor*, 574 F.2d 232, 234 (5th Cir.), *cert. denied*, 439 U.S. 893, 99 S.Ct. 251, 58 L.Ed.2d 239 (1978), "section [7206] simply requires the government to prove that the defendant willfully made and subscribed to a return, that it contained a written declaration that it was made under penalties of perjury and that the defendant did not believe the return to be true and correct as to every material matter."

■ Untaken deductions that offset gross income do not affect liability under section 7206. However, as the *Taylor* court noted, evidence of potential deductions may be relevant to show that the defendant believed that his return was correct. *Id.* at 235, n. 4. Thus, if Lassiter's deductions completely offset his income from firearms sales, he may have lacked the specific intent required by section 7206.

The district court allowed Lassiter to cross-examine the government's chief witness on the section 7206 counts about possible deductions that Lassiter could have taken on his tax returns. The district court did not, however, allow Lassiter to introduce precise, year-by-year calculations of the untaken deductions. Since Lassiter had not actually taken the deductions nor maintained contemporaneous records of the deductions in the relevant tax years, the district court concluded that the *post hoc* calculations would confuse and mislead the jury. *See* Fed.R.Evid. 403 (permitting exclusion of relevant evidence that would confuse fact finder).

■ The district court did not err in excluding the evidence. A violation of section 7206 does not require proof of additional tax due. Under the circumstances of this case, admitting evidence of untaken deductions would only obscure this point. The district court allowed Lassiter to argue that the existence of possible deductions that offset his firearms income proved that he did not commit tax return perjury under section 7206. *Taylor* does not require a different approach.

## Jury instructions

■ Lassiter objects to the district court's failure to instruct the jury on the concepts of "net worth" and "bank deposits." Lassiter, however, did not request such an instruction at trial. To prevail on appeal, Lassiter must demonstrate fundamental or plain error. Fed.R.Crim.P. 30. Lassiter cites no cases that require such instructions in a section 7206 prosecution, nor does our review of the charge reveal any deficiencies in its recitation of the relevant law. As this court previously stated, the "plain error" exception will not arise unless "the charge, considered as a whole, is so clearly erroneous as to result in a likelihood of a grave miscarriage of justice...." *United States v. Adams*, 634 F.2d 830, 836 (5th Cir.1981) (citation omitted). We find no plain error in the court's instructions.

## Sufficiency of the evidence

In his final assault on his conviction, Lassiter attacks the sufficiency of the evidence on the tax return counts and the firearms reporting counts. The standard of review for the sufficiency of the evidence in a criminal trial is whether "a reasonable trier of fact could [have found] that the evidence establishe[d] guilt beyond a reasonable doubt." *United States v. Bell*, 678 F.2d 547, 549 (5th Cir.1982) (en banc) *aff'd on other grounds*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983). The appellate court must view the evidence in the light most favorable to the government. *United States v. Barnes*, 761 F.2d 1026, 1031 (5th Cir.1985).

Lassiter's attack on the evidence supporting his section 7206 conviction focuses on the method of proof used by the government. The government employed the so-called "bank deposits" method of proving income, an indirect method of proof used when the defendant's records are incomplete or unreliable. *See United States v. Abodeely*, 801 F.2d 1020, 1023–24 (8th Cir. 1986). Although the proof is indirect, it has received judicial approval since at least 1935. *Gleckman v. United States*, 80 F.2d 394 (8th Cir.1935). Lassiter's failure to

keep any records relating to his firearms transactions necessitated the use of this method of proof.

 Use of the bank deposits method requires the government to make a thorough investigation of all receipts in order to prove that excess deposits were attributable to unreported income. *See United States v. Lawhon,* 499 F.2d 352, 356 (5th Cir.1974), *cert. denied,* 419 U.S. 1121, 95 S.Ct. 804, 42 L.Ed.2d 820 (1975). This investigation "must establish a guarantee of essential accuracy in the circumstantial proof at trial as an element of the government's burden of proving guilt beyond a reasonable doubt...." *United States v. Slutsky,* 487 F.2d 832, 840 (2d Cir.1973), *cert. denied,* 416 U.S. 937, 94 S.Ct. 1937, 40 L.Ed.2d 287 (1974). But, given a reasonable and thorough investigation, the law does not require the government to negate every possible non-income source of deposits. *United States v. Boulet,* 577 F.2d 1165 (5th Cir.1978).

The testimony of Agent Gregorski and Lassiter's own bank records sufficiently establish a violation of section 7206. The evidence established unexplained deposits in amounts averaging approximately $50,000 for each of the three tax years. Neither extensions of credit from the bank nor loans or gifts from Lassiter's father account for the discrepancy. Contrary to Lassiter's contention, admitted revisions by Agent Gregorski on cross-examination at best resulted in a small reduction in the amount of unreported income. The revisions did not vitiate the government's proof that Lassiter had knowingly subscribed to a materially false return.

The record also contains evidence sufficient to sustain Lassiter's conviction on firearms reporting violations under 18 U.S.C. Section 922(m). The short answer to Lassiter's argument here is that the jury simply did not credit his wife's explanation of how the forms partially inscribed by his students accidentally surfaced *completed* in his firearms transaction records. Circumstantial evidence contradicts her tale of fortuity. *See, e.g., United States v. Maggitt,* 784 F.2d 590 (5th Cir.1986) (approving use of circumstantial evidence to prove intent).

For the reasons articulated above, the judgment of the district court is

AFFIRMED.